IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KALIEF LADSON | CRIMINAL ACTION<br><br>NO. 23-161-1 |

MEMORANDUM

**Baylson, J.**                                                                                                          October 16, 2023

Defendant Kalief Ladson was indicted for unlawful possession of ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1). Following the Supreme Court's decision in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022) and the Third Circuit's recent en banc decision in Range v. Att'y Gen., 69 F.4th 96 (3d Cir. 2023) (en banc), Defendant has moved to dismiss the indictment as unconstitutional both on its face and as applied to him. For the reasons explained below, this Court will **DENY** the motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

As alleged by the Government, Defendant was involved in a January 2023 shootout in South Philadelphia. ECF No. 20 at 1-2. Video evidence allegedly reveals that Defendant and three other shootout participants fired several rounds of ammunition during the altercation. Id. Police collected the casings, and eventually identified Defendant as one of the shooters. Id. at 2-4. Defendant was subsequently indicted under 18 U.S.C. § 922(g)(1), the federal felon-in-possession ban statute. Id. at 6.

Defendant's felon status is predicated on two prior Pennsylvania convictions. First, in April 2013, Defendant and a co-conspirator robbed a victim at gunpoint. Id. at 4. Defendant ultimately pled guilty to one count of robbery, in violation of 18 Pa. Cons. Stat. § 3701, one count

1

of conspiracy, in violation of 18 Pa. Cons. Stat. § 903, and one count of possession of an instrument of crime, in violation of 18 Pa. Cons. Stat. § 907. Id.

Second, in May 2013, Defendant engaged in a different street shootout. Id. at 5-6. During that incident, a victim was shot several times, remaining in critical condition for over month. Id. Defendant eventually pled guilty to one count of attempted murder, in violation of 18 Pa. Cons. Stat. § 2502, and one count of carrying a firearm without a license, in violation of 18 Pa. Cons. Stat. § 6106. Id. at 6. In 2014, Defendant was sentenced to 6 to 12 years' incarceration on the attempted murder count, and 5 years' probation on the illegal firearm count. Id. Thus, Defendant's current alleged § 922(g)(1) offense occurred while he was on parole for these earlier crimes.

## II. SUMMARY OF CONTENTIONS

Defendant has moved to dismiss the § 922(g)(1) indictment in view of intervening Supreme Court precedent. ECF No. 14. Specifically, Defendant asserts that the Supreme Court's decision in Bruen and the Third Circuit's recent en banc decision in Range, which applies the teaching of Bruen to § 922(g)(1), render § 922(g)(1) unconstitutional both on its face and as applied to him. Id. at 1-3.

Relying on the two-step framework for as-applied challenges set forth in Range, Defendant asserts that (1) he is among "the people" the Second Amendment protects and (2) the Government has not identified a "historical analogue" that permanently disarmed people "like" Defendant at the founding, and so § 922(g)(1) is unconstitutional as-applied to Defendant. Id. at 5-7.

Defendant further contends that, even if his as-applied challenge fails, § 922(g)(1) is de facto unconstitutional for several reasons. Id. at 7-9. First, he argues that § 922(g)(1) is facially unconstitutional "because there is no founding-era history of disarming people convicted of felonies at all." Id. at 8. Second, he asserts that Range has rendered the statute void for vagueness,

2

as there are now "numerous Americans who fall within the text of the statute . . . but who cannot be disarmed consistent with the Second Amendment." Id.  Third, he contends that § 922(g)(1) depends on the Supreme Court's historically "expansive" interpretation of the Commerce Clause, which Judge Porter's concurrence in Range suggested may be incorrect. Id. at 9-10.  On this final point, however, Defendant actively concedes that current precedent "continues to foreclose this Court from second-guessing these decisions' broad view of Congress's power to regulate commerce." Id. at 10.

The Government rejects each of Defendant's positions and offers several additional arguments as to why the Second Amendment does not protect Defendant here.[1]  ECF No. 20.  First and foremost, the Government asserts that even under Bruen and Range's "historical analogue" test,[2] the ban on firearm possession as-applied to Defendant is constitutionally permissible because there is ample historical evidence of founding-era regulations that disarmed individuals who, like Defendant, the Government viewed as "dangerous to the peace." Id. at 15-17.

Analogues aside, the Government further argues that Defendant's motion must fail because he did not possess a firearm for a "lawful purpose," which the Government posits is a prerequisite for Second Amendment protection. Id. at 11.  Similarly, the Government asserts the semiautomatic weapon allegedly used by Defendant here is not the type of firearm protected by the Second Amendment. Id. at 12 (citing to District of Columbia v. Heller, 554 U.S. 570 (2008)).  Finally, the

---

[1] The Government also maintains that Range was wrongly decided, directing the Court to the Eighth Circuit's decision in United States v. Jackson, 69 F.4th 495(8th Cir. 2023), which heavily mirrors the decision of the initial Range panel. ECF No 20 at 7.  The Government does so only to preserve that argument for appeal. Id.

[2] The Government concedes that (1) Defendant was one of "the people" protected by the Second Amendment and (2) that ammunition possession, like firearm possession, is protected by the Second Amendment. Id. at 10.

3

Government contends that Defendant was permissibly barred from possessing a firearm while on parole, arguing "[t]here can be no question that the government may restrict those subject to custodial terms – whether in pretrial detention or release, or serving time in prison, or released subject to conditions of probation or parole – from possessing firearms during that time." Id. at 13.

The Government also rejects Defendant's facial and void-for-vagueness challenges to § 922(g)(1). First, it contends that Defendant's facial challenge fails because he cannot establish there are "no set of circumstances under which the Act would be valid." Id. at 22 (citing to United States v. Mitchell, 652 F.3d 387, 405 (3d Cir. 2011) (en banc)). Second, the Government contends that § 922(g)(1) cannot be void for vagueness because the terms of the statute are clear and unequivocal. Id. at 22-23.

### III. STANDARD OF REVIEW

Under Federal Rule of Criminal Procedure 12(b)(1), a party may "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R Crim. P. 12(b)(1). Where, as here, a defendant raises an as-applied challenge to an indictment, the Court must determine whether a law with some permissible uses "is nonetheless unconstitutional as applied" to the movant's specific conduct. Spence v. Washington, 418 U.S. 405, 414 (1974). By contrast, facial challenges require us to ask whether a law "could never be applied in a valid manner," Members of City Council of City of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 798 (1984), and therefore must be struck down in its entirety. This latter standard sets an extremely high bar, as the challenger must establish that "no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987).

## IV.   DISCUSSION

### A. Review of Range

The Third Circuit's en banc decision in Range sets forth a two-part test for determining whether § 922(g)(1) is constitutional as-applied to a particular defendant. Range, 69 F.4th at 101. First, it requires this Court to ask whether the "Second Amendment applies to a person and his proposed conduct." Id. But, as Range itself also makes clear, the answer to that question will almost always be yes, even when a person has a lengthy criminal history. Id. at 103. The Government concedes as much here, actively admitting that (1) Defendant was one of "the people" protected by the Second Amendment and (2) the possession of ammunition and firearms, as prohibited by § 922(g)(1), falls within the Second Amendment's sweep. ECF No. 20 at 10.

Because Defendant and his alleged possession of ammunition—as regulated by § 922(g)(1)—are protected by the Second Amendment, Range next requires this Court to ask whether § 922(g)(1)'s permanent disarmament, as-applied to Defendant, is "consistent with the Nation's historical tradition of firearm regulation." Range, 69 F.4th at 103 (citing to Bruen, 142 S. Ct. at 2130). The Government bears the burden of establishing that historical tradition. Id. To do so, it must identify "historical analogues" demonstrating that founding-era governments disarmed people "like" the Defendant. Id. at 103, 106 & 104 n.9. This inquiry is the crux of our case.

Under Range, that required analogue has two components: the offense and the punishment. Id. at 104-105. The punishment prong is more straightforward, so we begin there. Simply put, Range requires that a founding-era analogue must have resulted in a "lifetime ban on firearm possession." Id. at 105; see also id. at 104 n.9 ("the Government did not carry its burden to provide a historical analogue to permanently disarm someone like Range") (emphasis added). Notably,

Range further states that the analogue must have expressly called for disarmament, rather than some different, more severe punishment. Id. at 105. As the Range majority explains: "That Founding-era governments punished some nonviolent crimes with death does not suggest that the *particular* (and distinct) punishment at issue—lifetime disarmament—is rooted in our Nation's history and tradition. The greater does not necessarily include the lesser: founding-era governments' execution of some individuals convicted of certain offenses does not mean the State, then or now, could constitutionally strip a felon of his right to possess arms if he was not executed." Id.

On the crime prong, the Range majority rejected the Government's contention that it had put forth sufficient historical evidence of the disarmament of non-violent fraudsters. Id. In so doing, however, the Court made clear that its decision was "narrow" and tailored to Mr. Range himself. Id. at 106; cf United States v. Jenkins, No. CR 23-088, 2023 WL 6534200, at *13 (E.D. Pa. Oct. 6, 2023) ("the en banc majority did not fully articulate a test for how to dispose of an as-applied challenge to Section 922(g)(1)"). After reiterating Bruen's mandate to "require[] only that the government identify a well-established and representative historical analogue, not a historical twin," Range, 69 F.4th at 103 (citing to Bruen, 142 S. Ct. at 2133), the majority applied that test exclusively in the negative, holding that the Government's asserted founding-era "status-based" disarmament statutes pertaining to religion, race, and governmental rebellion were "far too broad" to be considered analogues to Mr. Range's nonviolent welfare fraud offense. Id. at 104-05 (citing to Bruen, 14 S. Ct. at 2134).

### B. Range is Distinguishable

Unlike Mr. Range's non-violent fraud offense, however, Defendant's prior convictions here plainly fall within the sweep of appropriate historical analogues. The indictment in this case

does not detail those convictions, but the briefing for the parties does. And by any imaginable metric, Defendant's Pennsylvania state law convictions for robbery and attempted murder, both of which involved the use of a firearm, ECF No. 20 at 4-6, "demonstrate [a] propensity for violence," United States v. Jackson, 69 F.4th 495, 504 (8th Cir. 2023), and thus that Defendant, "if armed, pose[s] a threat to the orderly functioning of society," Range, 69 F.4th at 110 (Ambro, J., concurring).

Notably, the Range majority expressly left open the possibility that—for "dangerous" individuals not "like" Mr. Range—the Government in a future case might be able to put forth sufficient historical analogues to support disarmament. Id. at 104 n.9; see also Jenkins, 2023 WL 6534200 at *13 ("multiple opinions leading up to Range show that Founding-era governments disarmed people convicted of violent felonies and groups they distrusted . . . because, in different ways, they thought that these groups were dangerous. Range did not dispute the strength or validity of this historical record—it just found that record inapplicable in the case before it").

The Government has carried that burden here, as it has identified numerous historical analogues establishing that the Second Amendment permits the disarmament of those who, like Defendant, are "dangerous to the Peace." ECF No. 20 at 15-17 (citing to Act of May 1, 1776, ch. 21, § 1, 1776 Mass. Acts 479; Act of June 13, 1777, ch. 21, § 4, 1777 Pa. Laws 63; Act of May 28, 1777, ch. 3 (Va.), reprinted in 9 William Waller Hening, The Statutes at Large; Being a Collection of all the Laws of Virginia from the First Session of the Legislature, in the Year 1619, at 281-83 (1821); Act for Constituting a Council of Safety, ch. 40, § 20, 1777 N.J. Laws 90; Act for the Punishing of Criminal Offenders, 1692 Mass. Laws 11-12; Act for the Punishing Criminal Offenders, 1696-1701 N.H. Laws 15). Accordingly, the Court rejects Defendant's as-applied challenge to his § 922(g)(1) indictment.

### C. **Post-Bruen Precedent Supports This Conclusion**

Significant parallel- and post-Bruen precedent reinforces this conclusion, as several courts have embraced the constitutionality of disarming the dangerous. For instance, in Frein v. Pennsylvania State Police, the Third Circuit explained that "[t]he seeds of the Second Amendment were planted centuries ago in England, when King Charles II authorized his officers 'to search for and seize all Armes in the custody or possession of any person' whom they considered dangerous" and that "the government may confiscate guns from those who have been convicted of serious crimes or committed dangerous acts." 47 F.4th 247, 255-56 (3d Cir. 2022) (Bibas, J.) (citation omitted); see also Folajtar v. Att'y Gen., 980 F.3d 897, 912 (3d Cir. 2020) ("the historical touchstone is danger, not virtue") (Bibas, J., dissenting).

Likewise, the Supreme Court indicated support for this view in Bruen itself, where the Court cited favorably to then Judge-Barrett's dissent in Kanter v. Barr, in which she opined that "[t]he historical evidence ... [supports] that the legislature may disarm those who have demonstrated a proclivity for violence or whose possession of guns would otherwise threaten the public safety." Kanter v. Barr, 919 F.3d 437, 454 (7th Cir. 2019), abrogated by Bruen, 142 S. Ct. 2111 (2022) (Barrett, J., dissenting).

Moreover, several courts in this district have also followed suit. For example, in United States v. Ames, a case that heavily mirrors the present one, Judge Kenney explained that "[f]irearm regulation in the era of the Second Amendment's ratification disarmed individuals who 'posed a potential danger' to others." 2023 WL 5538073, at *3 (E.D. Pa. Aug. 28, 2023) (citation omitted). Based on that history, he concluded that the defendant in that case was "unquestionably not 'like Range,'" as his "crimes of robbery and aggravated assault are paradigmatic violent crimes" that "demonstrate[d] that he poses a danger to society." Id.; see also United States v. Cotton, No. CR 22-471, 2023 WL 6465836, at *3 (E.D. Pa. Oct. 4, 2023) ("At the founding of our own Nation,

8

state legislatures disarmed those who posed a danger to society when they engaged in particular conduct"); United States v. Blackshear, No. CR 23-159, 2023 WL 5985284, at *2-3 (E.D. Pa. Sept. 14, 2023) (finding that "firearm regulation in the era of the Second Amendment's ratification disarmed individuals who 'posed a potential danger' to others" and that "[t]he understanding that dangerous individuals could be disarmed persisted after ratification") (citation omitted); United States v. Irizarry, No. CR 21-202, 2023 WL 6406278, at *3-4 (E.D. Pa. Oct. 2, 2023) (same); United States v. Johnson, No. CR 23-77, 2023 WL 6321767, at *2-3 (E.D. Pa. Sept. 27, 2023) (same); United States v. Pearson, No. CR 22-271, 2023 WL 6216527, at *3 (E.D. Pa. Sept. 25, 2023) (similar); United States v. Green, No. CR 22-387, 2023 WL 6164407, at *2 (E.D. Pa. Sept. 21, 2023) (similar); United States v. King, No. 5:22-CR-00215-001, 2023 WL 4873648, at *4 (E.D. Pa. July 31, 2023) (similar); Jenkins, 2023 WL 6534200, at *12 (similar). Here too, Defendant is undeniably not "like" Mr. Range, and so his as-applied challenge fails.

### D. Defendant's Remaining Challenges

Defendant's subsidiary facial and vagueness challenges are similarly unavailing. First, the Supreme Court's decisions in Bruen, Heller, and McDonald v. Chicago., 561 U.S. 742 (2010), squarely foreclose Defendant's argument that § 922(g)(1) is facially unconstitutional "because there is no founding-era history of disarming people convicted of felonies at all." ECF No. 14 at 8. As Judge Shwartz explained in her Range dissent, "a majority of the Bruen Court reiterated that felon bans are presumptively lawful, and notably did so in the very case that explicitly requires courts to find historical support for every firearm regulation." 69 F.4th at 114 (Shwartz, J., dissenting). Judge Ambro's concurrence likewise repeatedly stressed that § 922(g)(1) "remains presumptively lawful," id. at 109 (Ambro, J., concurring), echoing Justice Kavanaugh's concurrence in Bruen itself, Bruen, 142 S. Ct. at 2162 (Kavanaugh, J., concurring). This Court

9

therefore agrees that "Range does not demand [Defendant's] reading," as the Range majority's "narrow" opinion merely "surveyed the putative historical analogues and held Section 922(g)(1) unconstitutional as applied to just one person." Jenkins, 2023 WL 6534200, at *16.

Defendant's void-for-vagueness challenge fares no better. As the Government correctly observes and Defendant actively concedes, the plain text of the statute is in no way vague. ECF No. 14 at 8. It clearly and unambiguously prohibits those persons convicted of a felony or a felony equivalent from possessing a firearm or ammunition. 18 U.S.C. § 922(g)(1). So it is simply incorrect to suggest the statute "fails to provide a person of ordinary intelligence fair notice of what is prohibited" or "is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 304 (2008). Indeed, "[i]n the criminal context, . . . vagueness attacks are based on lack of notice," and will not succeed where "reasonable persons would know their conduct puts [them] at risk of punishment under the statute." United States v. Fullmer, 584 F.3d 132, 152 (3d Cir. 2009) (citation omitted). Here though, § 922(g)(1) unquestionably provides notice to all those who have previously committed a felony. That the Second Amendment might then constitutionally preclude punishment in certain instances should not lead us to conclude otherwise. As Judge Kenney succinctly put it in Ames, "Section 922(g)(1) is not vague as it clearly bars the possession of a firearm by any person who has previously been convicted of a crime punishable by more than one year in prison (or of certain misdemeanors as specifically defined). Whether 18 U.S.C. § 922(g)(1) offends other constitutional rules, presents a separate issue, that is properly litigated in applied challenges such as Range." Ames, 2023 WL 5538073, at *3; see also Johnson, 2023 WL 6321767, at *3 (similar); Blackshear, 2023 WL 5985284, at *3 (similar); Green, 2023 WL 6164407, at *2 (similar). As such, both of Defendant's facial challenges to § 922(g)(1) fall short.

### E. Government's Remaining Arguments

The Government raises several additional arguments to resolve this motion in its favor. Because Defendant's past crimes render him dangerous and thus subject to disarmament under Bruen and Range, however, the Government need not prevail on these arguments to sustain its indictment. Thus, the Court addresses each argument only briefly.

1. Lawful Purpose

The Government first asserts that, under Bruen and Heller, the Second Amendment does not actually protect Defendant's conduct here because he did not possess a firearm for a "lawful purpose." ECF No. 20 at 11. The text of § 922(g)(1), of course, prescribes no such additional requirement. So, liberally construed, the Government argues that because § 922(g)(1) does not distinguish between firearm possession for lawful and unlawful purposes, the statute regulates both protected and unprotected conduct. Id. The Government thus posits that where, as here, a defendant brings an as-applied challenge, that challenge may turn on a defendant's purpose for possessing the illegal firearm. Id.

All applicable precedent supports the Government's view. As Bruen succinctly explains, "[i]n Heller and McDonald, [the Supreme Court] held that the Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense." 142 S. Ct. at 2125 (emphasis added). Indeed, in Heller, Justice Scalia made clear "the Second Amendment [does not] protect the right of citizens to carry arms for any sort of confrontation," 554 U.S. at 595, after which he engaged in an extended discussion of founding-era laws that specifically focused on the right to self-defense, id. at 601-03.

True, the conferral of the right for one purpose does not unequivocally preclude the possibility that the right extends for other purposes. But the mere fact that some delimiter exists

11

necessarily means there will be situations in which a defendant's purpose for possession excludes them from Second Amendment protections. Jenkins, 2023 WL 6534200, at *10-11, 16. And if that is correct, Defendant's alleged purpose here—to engage in an unprompted shootout—undoubtedly falls outside the scope of the right. That said, the indictment itself does not detail that purpose or Defendant's underlying conduct, given that § 922(g)(1) is a possession crime. So the Court need not rule on this issue pretrial, as "Rule 12 permits pretrial resolution of a motion to dismiss the indictment only when trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." United States v. Pope, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.) (emphasis added). As such, the parties may revisit this issue, if needed, after trial.

2. Type of Ammunition/Weapon

Relatedly, the Government further argues Second Amendment protections do not extend to the type of "unusual and dangerous weapon" that Defendant allegedly used here. ECF No. 20 at 12. This argument heavily mirrors the Government's "lawful purpose" claim, as here too, the Government asserts that even if the Second Amendment would otherwise prohibit a § 922(g)(1) conviction for felons "like" Defendant, Range, 69 F.4th at 106, it does not preclude the statute from penalizing felons who use semiautomatic weapons, given that a defendant has no constitutional right to possess such weapons in the first place.

Again, the likes of Heller and United States v. Miller, 307 U.S. 174 (1939) squarely support this position. As the Heller Court explained, such a limitation "accords with the historical understanding of the scope of the right," because it is "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" 554 U.S. at 625-27 (citations omitted); see also United States v. One (1) Palmetto State Armory PA-15 Machinegun

Receiver/Frame, Unknown Caliber Serial No. LW001804, 822 F.3d 136, 141 (3d Cir. 2016) ("Heller and subsequent decisions in our Court make clear that the de facto ban on machine guns found in § 922(o) does not impose a burden on conduct falling within the scope of the Second Amendment").

Thus, where a defendant brings an as-applied challenge to § 922(g)(1) for possession of weapon that is "unusual and dangerous," that challenge should fail. Here, however, the Government concedes that Defendant here is "not presently charged with possessing a machine gun," ECF No. 20 at 12, but nonetheless posits—based on the events allegedly depicted in the video surveillance footage in this case—"there is a reasonable probability that the defendant was armed with [a machine gun] on the day of this shooting incident," id. So here too, "pretrial resolution . . . would be of no assistance in determining the validity of the defense." Pope, 613 F.3d at 1259.

3. Parolee Status

Lastly, the Government asserts that Defendant was permissibly barred from possessing a firearm while on parole. This argument also has merit, as Second Amendment rights unquestionably "may be limited during the period of probation, just as other myriad constitutional rights." United States v. Shaw, No. CR 22-1 (JEB), 2023 WL 3619416, at *7 (D.D.C. May 24, 2023); United States v. Terry, No. 2:20-CR-43, 2023 WL 6049551, at *3 (W.D. Pa. Sept. 14, 2023); United States v. Hilliard, No. 2:23-CR-110, 2023 WL 6200066, at *1 (W.D. Pa. Sept. 21, 2023). Again, the text of § 922(g)(1) does not distinguish between those felons on parole and those who are not. So Defendant's parolee status simply would become another wrinkle during an as-applied challenge that otherwise fails the historical analogue test. Put differently, § 922(g)(1) remains constitutional as-applied to those defendants who possess a firearm while on parole, even

if its application would become unconstitutional once parole ends.  The conviction would hold, even if a lifetime ban could not.

### V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Indictment is **DENIED.**  An appropriate Order follows.

O:\CRIMINAL DEPUTY (Lori)\ORDERS\23-161 - Ladson MTD Indictment MEMO.docx